**AIRPARK INTERNATIONAL I t/a Park–N–Go and Colonial Airport Parking, Inc. and Rama Construction Co., Inc. and 621 North Governor Printz, Inc. t/a Rosenbluth International and 621 North Governor Printz Boulevard and Smart Park, Inc., et al.**

v.

**INTERBORO SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1996.

Decided June 7, 1996.

Thomas L. Kelly, for Appellant.

Richard H. Martin, for Appellees.

Before DOYLE, PELLEGRINI and KELLEY, JJ.

PELLEGRINI [1], Judge.

Interboro School District (School District) appeals the order of the Court of Common Pleas of Delaware County (trial court) sustaining the appeal of various commercial parking lot companies and invalidating the School District's tax on commercial parking lots.

Airpark International I t/a Park–N–Go, Colonial Airport Parking, Inc., Rama Construction Company, Inc., 621 North Governor Printz, Inc. t/a Rosenbluth International, 621 North Governor Printz Boulevard, and Smart Park, Inc., et al. (Parking Operators) all

1. This case was reassigned to the authoring judge on May 14, 1996.

operate commercial parking lots located in Tinicum Township near Philadelphia International Airport. Tinicum Township is situated entirely within the School District.

On May 18, 1994, the School District adopted a "Resolution to Adopt Parking Lot Tax" (Resolution) pursuant to Section 2 of The Local Tax Enabling Act (LTEA), Act of Dec. 31, 1965, P.L. 1257 as amended, 53 P.S. § 6902.[2] Paragraph 3 of the Resolution provides:

> ... a tax of six (6%) percent shall be levied and imposed upon the fees paid for all transactions in and for the parking of automobiles or motor vehicles on commercial parking lots within the boundaries of the Interboro School District (School District). Such tax shall be due to the School District by any person conducting and/or operating such parking lot.

The tax was intended to meet the School District's annual budget requirements by raising approximately $600,000 and to partially alleviate the need for increases in the millage rate applied to real estate within the School District.[3] Additionally, the Parking Operators are subject to the parking lot tax enacted by the Township of Tinicum effective January 1, 1990, which is due at the rate of six percent of their gross receipts.[4]

The Parking Operators filed a statutory appeal with the trial court[5] raising numerous objections:

- the tax was a business privilege or mercantile tax on gross receipts which is not permitted by the Local Tax Reform Act of 1988 (Reform Act), Act of December 13, 1988, P.L. 1121, 72 P.S. §§ 4750.101—4750.3112;

- the tax violates the Equal Protection Clause of the U.S. Constitution and the Uniformity Clause of the Pennsylvania Constitution by imposing a tax burden unequal to that imposed upon similar kinds of businesses and, as such, constitutes a taking;

- the tax violates the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3 by imposing a direct tax on persons traveling in interstate commerce;

- the tax is excessive because it exceeds the limitation set on like taxes in the LTEA; and,

2. Section 2 of the LTEA, 53 P.S. § 6902, provides, in pertinent part:

> The duly constituted authorities of the following political subdivisions, ... school districts of the second class, school districts of the third class, and school districts of the fourth class, ... may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property ...

3. The parties stipulated that for the 1994–95 budget, the School District determined that it would have to increase its millage on real estate by 57 mills (to a total millage of 598 mills), in addition to enacting the parking lot tax. If the parking lot tax was not enacted, however, the parties stipulated that the School District would have to raise the millage by 77 mills, as opposed to 57 mills. (Stipulation of Facts ¶ 24–26, Reproduced Record 133a–134a).

4. (Stipulation of Facts ¶ 30, R.R. 135a). The ordinance enacted by Tinicum Township provides:

> Section 3. Imposition of Tax. On and after the effective date of this Ordinance, a tax of six percent (6%) of the gross receipts from all transactions in and for the parking of automobiles or motor vehicles on parking lots in the Township of Tinicum is hereby imposed. Such taxes shall be due to the Township of Tinicum by any person conducting and/or operating such parking lot.

(R.R. 141a, Exhibit B to the Stipulation of Facts).

5. Taxpayers aggrieved by a local tax enacted under the LTEA have the right to appeal pursuant to Section 6 of the LTEA, 53 P.S. § 6906, which provides in relevant part:

> ... Within said thirty days, taxpayers representing twenty-five percent or more of the total valuation of real estate in the political subdivision as assessed for taxation purposes, or taxpayers of the political subdivision not less than twenty-five in number aggrieved by the ordinance or resolution shall have the right to appeal ...
>
> It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax.

● the tax is unreasonable under the LTEA because it duplicates the existing tax of Tinicum Township and does not comply with the halving provisions of the LTEA.

On a stipulation of facts by the parties, the trial court held that the tax was a business privilege tax or mercantile tax on gross receipts enacted after 1988 in violation of Section 533 of the Reform Act, 72 P.S. § 4750.533.[6] The trial court declared the tax invalid and the School District filed this appeal.

## I.

The core issue, the one addressed by the trial court, is whether the School District's parking lot tax is a privilege tax on gross receipts or a transaction tax. A transaction tax is permitted by the plain language of Section 2 of the LTEA, 53 P.S. § 6902, *supra* footnote 1; however, a business privilege tax on gross receipts and a mercantile tax on gross receipts are prohibited by Section 533 of the Reform Act, 72 P.S. § 4750.533, *supra* footnote 6. The School District contends that the parking lot tax is neither a mercantile tax nor a business privilege tax which would violate the Reform Act, but is a tax upon the transaction fees for parking in commercial parking lots.[7]

6. Section 533(a) of the Reform Act, 72 P.S. § 4750.533(a), states:

After November 30, 1988, and notwithstanding any other provision of this act except for subsection (b), no political subdivision may levy, assess or collect or provide for the levying, assessment or collection of a mercantile or business privilege tax on gross receipts or part thereof.

This provision of the Local Tax Reform Act is effective despite the fact that the constitutional amendment required by Section 3112 and related to the Reform Act was rejected by the voters because this section states that it is effective notwithstanding any other provision of the Reform Act. *Penn Traffic Co. v. City of DuBois*, 156 Pa.Cmwlth. 107, 626 A.2d 1257 , *petition for allowance of appeal denied*, 536 Pa. 634, 637 A.2d 294 (1993).

7. To the extent that the Parking Operators argue that the tax is prohibited by the Reform Act merely if it is measured on gross receipts, we disagree. The plain language of the Reform Act prohibits only a mercantile tax on gross receipts or a business privilege tax on gross receipts, and

In *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), the Supreme Court explained the difference between a transaction tax and a business privilege tax. That case involved a challenge to a tax on "every person engaging in any business in the City ... at the rate of six mills on each dollar of volume of the gross annual receipts".[8] The Supreme Court held that this tax was a business privilege tax, as authorized by the LTEA, and the measure of the tax could include gross receipts from out-of-City activities contributed to by the maintenance of a base of operations within the City. In so holding, the Supreme Court recognized that the LTEA permits taxes on both transactions and privileges as separate subjects of taxation:

The "privilege" of engaging in business within the City, which the [LTEA] establishes as a subject that may be taxed, must be regarded as being separate and apart from "transactions" within the City that may be taxed. To regard otherwise would be to ignore the significance of the two subjects for taxation having been separately stated in the [LTEA].

*Id.* at 106, 511 A.2d at 1324 (citations omitted). The Supreme Court also differentiated between a business privilege tax and a transaction tax:

does not affect any other tax that may be computed by gross receipts.

A mercantile tax and a business privilege tax are both taxes upon the privilege of conducting business in a locality and are generally measured by the gross value of business annually transacted or the gross receipts, although a mercantile tax, unlike a business privilege tax, is generally based on merchandise sold. *See City of Philadelphia v. Tax Review Board*, 158 Pa.Cmwlth. 402, 631 A.2d 1072, 1074–75 (1993); Bright, Pennsylvania Taxation, §§ 33.022 and 33.024. "Gross receipts" is defined as "the total amount of money or the value of other considerations received from selling property or from performing services." Black's Law Dictionary 633 (5th ed. 1979). A gross receipts tax or gross income tax is a "levy on total receipts of business without allowance for expenses and deductions." Black's Law Dictionary 632.

8. Section 243.02 of the Pittsburgh Code. We note that the adoption of this tax and the cases upholding it occurred prior to the passage of the Reform Act.

For any given business, transactions occurring outside the City frequently have a substantial relationship to transactions occurring within the City. Out–of–City transactions may in numerous ways be benefited by the fact that the taxpayer maintains an office within the City, but the fact remains that out-of-City transactions are not transactions within the City, and the [LTEA] has conferred power upon the City to tax only transactions "within the limits" of the City.

*Id.* at 104–05, 511 A.2d at 1324. As for the privilege tax, the Supreme Court stated:

[I]t is to be emphasized that the plain language of the [LTEA] provides for taxes to be levied upon privileges within the City. In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside the City.

*Id.* at 109, 511 A.2d at 1326.

■ The difference then between a business privilege tax and a transaction tax is not just the stated subject of the tax, but how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is "far more than the sum of transactions ... performed within the territorial limits of the taxing entity." *Id.* A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.[9]

This distinction between a privilege tax on gross receipts and a transaction tax is illustrated by our decision in *Alco Parking Corporation v. City of Pittsburgh,* 6 Pa.Cmwlth. 433, 291 A.2d 556 (1972), *reversed on other grounds,* 453 Pa. 245, 307 A.2d 851 (1973), *reversed,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974).[10] In that case, we held that a 20 percent tax imposed by the City of Pittsburgh in the 1960s on all parking transactions measured by the gross receipts from such transactions[11] was a transaction tax and not a business privilege tax because the ordi-

---

**9.** *See also Albright & Friel v. School District of Philadelphia,* 187 Pa. Superior Ct. 387, 144 A.2d 745 (1958), wherein the taxpayer was an engineering company with only one office which was located within the district; however, part of its gross receipts were produced by supervising construction outside of the district. Although the tax provision stated that "every person engaging in business ... shall pay an annual tax at the rate of one mill on each dollar of the annual receipts", the taxpayer argued that it was, in fact, a transaction tax that could not be levied on transactions outside of the district. The Superior Court held that because the tax provision states that it is imposed on those doing business within the district and on their gross receipts, the tax is a business privilege tax and is not a transaction tax on only those transactions occurring within the district.

**10.** The Pennsylvania Supreme Court in *Alco Parking Corp.* struck down the City's ordinance as confiscatory, particularly in light of the effect of competition with city-owned parking lots. The United States Supreme Court disagreed that the parking lot tax was confiscatory, holding that the fact that a tax is so excessive so as to render a business unprofitable, even in combination with competition from a tax-exempt business, does not make the tax unconstitutional.

**11.** Pittsburgh Parking Tax Ordinance of 1969 (Ordinance 704). *See City of Pittsburgh v. Public Parking Authority of Pittsburgh,* 11 Pa.Cmwlth. 442, 314 A.2d 887 (1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975).

nance set the subject and measure of the tax as the transaction.[12] *Id.* 291 A.2d at 560 n. 2.

In this case, the School District's Resolution provides that the subject of the tax is "the fees paid for all transactions in and for the parking of automobiles". The measure of the tax is simply six percent of "the fees paid".[13] The Resolution then only taxes the transaction within the School District, and neither purports to tax nor does it effectively tax the privilege of doing business in the School District, because it does not refer to the privilege as the subject of the tax and the tax is not measured on all gross receipts of the Parking Operators. That the Parking Operators in this case have no receipts other than the gross receipts from the taxed parking transactions does not make the Resolution a business privilege tax on gross receipts. Other parking lots in the School District presently or in the future could have receipts from other transactions, such as from transportation to the airport or car washes upon the owner's return, which would be taxed under a business privilege tax but not under the transaction tax imposed.[14] Although the School District's tax may have been more artfully written, even strictly construed as we are required to do,[15] it is a

transaction tax permitted by the LTEA and it is not prohibited by the Reform Act. Accordingly, we would reverse the trial court's decision to the contrary requiring us to address the Parking Operators' further challenges to the tax.

II.

Even if the tax is not prohibited by the Reform Act, the Parking Operators contend that the parking lot tax violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Uniformity Clause of the Pennsylvania Constitution.[16] They argue that the tax is not uniform because it is imposed on only one portion of the airport service industry, not the entire industry. Also, they contend that it should be struck down because it is intended to benefit a different group of taxpayers within the School District.

The test of uniformity is whether there is a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985).[17]

12. The decision in *Mellon Square Garage, Inc. v. Public Parking Authority of Pittsburgh*, 442 Pa. 229, 275 A.2d 654 (1971), is not contradictory on this point. Addressing the issue of whether the City of Pittsburgh tax was a "sales tax" for purposes of calculating the rent due under a sublease between the parties, the Supreme Court merely held that the parking tax was not a sales tax. Although the Court stated that the tax "resembles" a privilege tax, that statement is mere dicta because the issue was not before the Court and the Court did not consider what other type of tax the parking tax could be under the LTEA.

13. The nature of a tax is to be determined by its substance and not by its label. *Coney Island, II, Inc., et al. v. Pottsville Area School District*, 72 Pa.Cmwlth. 461, 457 A.2d 580, 583 (1983). *See also Commonwealth v. Eastern Motor Express, Inc.*, 398 Pa. 279, 157 A.2d 79 (1959) (although what a tax is called is entitled to weight, the nature of the tax depends not on its label, but on its practical effect and operation).

14. We also note that, contrary to the School District's argument, it is insufficient that the Parking Operators can pass on the burden of the tax by increasing their charges. The mere fact that the tax is passed on to the purchaser does

not determine upon whom the tax is imposed. *Mellon Square Garage.* Moreover, any business has the option of passing on any expenses or taxes inflicted on it, including any tax measured by all or a portion of its gross receipts.

15. A tax statute should be strictly construed, and in cases of doubt, the construction should be against the government. Section 1928 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b); *Penn Traffic Company*, 626 A.2d at 1259.

16. Article VIII, Section 1 of the Constitution of the Commonwealth of Pennsylvania provides:

All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

17. In exercising its taxing power, the Legislature and political subdivisions are subject to the requirements of the Uniformity and Equal Protection Clauses. *Id.* The standards for those constitutional requirements are identical. *Id.* The Legislature possesses wide discretion in matters of taxation, and there is a presumption that tax enactments are constitutionally valid and that the

So long as the classification imposed is based upon some standard capable of reasonable comprehension, be that standard based upon ability to produce revenue or some other legitimate distinction, equal protection of the law has been afforded. *Aldine Apartments, Inc. v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981) (citing *Commonwealth v. Life Assur. Co. of Pa.,* 419 Pa. 370, 214 A.2d 209 (1965), *appeal dismissed,* 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 524 (1966)).

Contrary to the Parking Operators' contention that the parking lot tax involves a non-uniform classification, our Supreme Court in *Alco Parking Corp.,* 453 Pa. at 257, 307 A.2d at 858, *reversed on other grounds,* 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974), squarely held that such a classification was valid and did not violate either the uniformity provision of the Pennsylvania Constitution or the Equal Protection Clause of the Fourteenth Amendment. That the School District could have imposed a tax on other or all types of businesses servicing the airport does not make the classification of commercial parking lots unreasonable.

■ As to whether the tax unfairly burdens the Parking Operators in favor of another group, the Parking Operators argue that imposing the parking lot tax rather than choosing a greater increase in the millage on all property owners disproportionately requires them to supply the School District's operating budget. The Parking Operators argue that such substantially unequal tax burdens are unconstitutional, citing *Monzo.* In *Monzo,* a county tax on room rentals was imposed on all hotel operators, but was for the benefit of a convention center which was located within the City of Pittsburgh. The Supreme Court held that there were no ben-

efits received by the majority of those in the class taxed because only hotels within or near the city benefited from the convention center and, therefore, the hotel tax was an unconstitutional appropriation of money from one group to the benefit of another.

Unlike *Monzo,* the tax here is for the general public use of funding education. The provision of education is an advantage of a civilized society that all people benefit from, including businesses. *Airway Arms, Inc. v. Moon Area School District,* 498 Pa. 286, 304, 446 A.2d 234, 244 (1982), *appeal dismissed sub nom., Grant–Oliver Corp. v. Moon Area School District,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). While the Parking Operators may pay more taxes than others within the School District, it is the result of a reasonable classification of taxpayers and is not to benefit one group at the expense of another. Finally, if we were to adopt the Parking Operators' reasoning, any state or local tax on a particular group of taxpayers would be unconstitutional.[18]

### III.

■ The Parking Operators also contend that the tax is excessive under Section 6 of the LTEA, 53 P.S. § 6906, *supra,* footnote 4. Specifically, they argue that a tax of six percent is excessive because it is higher than an analogous tax as limited by Section 8 of the LTEA, 53 P.S. § 6908.[19] Although not addressing transaction taxes, Section 8 sets forth caps for specific types of taxes, as follows:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

.    .    .    .    .

---

burden of proving invalidity is upon the person challenging the tax. *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985). *See also* Section 6 of the LTEA, 53 P.S. § 6906.

**18.** The Parking Operators also raised in their complaint that the tax is unconstitutional under the Commerce Clause of the U.S. Constitution, Article I, Section 8, Clause 3, by imposing a direct tax on persons traveling in interstate commerce. Although they did not address this argument in their brief to this court, we note that the

question would be controlled by the Supreme Court's decision in *Airway Arms, Inc.,* holding that a commercial parking lot tax affecting airport lots was not burdensome to interstate commerce. *Id.* at 302–303, 446 A.2d at 243.

**19.** In their brief, the Parking Operators argue that the transaction tax is similar to a gross receipts tax on people engaged in the business of wholesale or resale of goods, Section 8(2). However, in their complaint, they argue that it is similar to a retail sales tax, Section 8(4).

(2) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, one mill, by retail dealers in goods, wares and merchandise and by proprietors of restaurants ... are served, one and one-half mills; ...

. . . . .

(4) On retail sales involving the transfer of title or possession of tangible personal property, two percent.

. . . . .

In determining whether a tax imposed by the School District is sufficiently analogous to a tax capped by Section 8 in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 216–17, 346 A.2d 269, 293–94 (1975), the Supreme Court stated:

> The very variety of taxes authorized by the [LTEA] precluded specification of limits on all types of tax. The problem therefore remains how to deal with those taxes which the [LTEA] authorizes a political subdivision to impose but which are not specifically limited by section 8. Even in such cases, we believe that section 8 provides a valuable starting point. A tax may be outside of the class governed by section 8 but sufficiently similar to a member of that class to support the conclusion that a rate entirely disproportionate to the rates specified by section 8 for the similar tax would be "excessive and unreasonable." Before reaching such a conclusion, a court would need to consider carefully any differences (e.g., in economic impact of the tax, ability of the class of taxpayers to pay, relation of other taxes imposed on the class of taxpayers to the cost of services rendered to them, etc.) suggested by the taxing authority, giving great weight to the judgment of the municipal officials as to the significance of those differences. (Footnote omitted).

As to whether the parking lot tax is sufficiently similar to a retail sales tax, which is limited to two percent, the Supreme Court held in *Airway Arms, Inc.* that parking services are unlike retail sales because the patrons pay not for the acquisition of property, but for the use of the parking lot, and the transfer of possession is only temporary and for the benefit of the patron. *Airway Arms, Inc.*, 498 Pa. at 307, 446 A.2d at 245.

Likewise, the parking lot tax is not sufficiently similar to a tax on the gross receipts of retailers and wholesalers which is essentially a mercantile tax, based on our holding in Section I that it is a transaction tax which is distinct from privilege taxes. The parking lot tax is on a different subject, the transaction rather than the retailer or wholesaler, and is measured only by the fees from the parking transaction and not by total gross receipts of the business. Moreover, the limitation in Section 8(2) is on taxes imposed on dealers in goods, wares and merchandise, whereas the parking lot tax is on the fees paid for a service with no merchandise involved.

### IV.

The Parking Operators also contend that the parking lot tax is unreasonable because it duplicates the parking lot tax imposed by the Township of Tinicum and should be reduced by half under Section 8 of the LTEA. Section 8 of the LTEA, 53 P.S. § 6908, provides, in pertinent part:

> Except as otherwise provided in this act, at any time two political subdivisions shall impose *any one of the above taxes on the same person, subject, business, transaction or privilege*, located within both such political subdivisions, during the same year or part of the same year, under the authority of this act then the tax levied by a political subdivision ... shall during the time such duplication exists, ... *be one-half of the rate, as above limited*, and such one-half rate shall become effective by virtue of the requirements of this act from the day such duplication becomes effective ...

(Emphasis added).

This language, which follows the caps on certain types of taxes discussed in Section III, *supra*, plainly states that the rate of taxes are affected only when the political subdivisions enact one of the taxes limited

"above" and, if so, then the halving requirements apply so that the two taxes together do not exceed the rate stated "above". Where, as here, the tax imposed is not one that is specifically limited in the initial parts of Section 8, then the halving provisions do not apply. *Carpenter and Carpenter v. City of Johnstown*, 146 Pa.Cmwlth. 274, 605 A.2d 456, 458, *petition for allowance of appeal denied*, 531 Pa. 661, 613 A.2d 1210 (1992).

Because the Parking Operators have not proven that the parking lot tax is excessive or unreasonable or that the Resolution is unlawful, under Section 6 of the LTEA, 53 P.S. § 6906, the tax is valid. Accordingly, we reverse the order the trial court.

### ORDER

AND NOW, this 7th day of June, 1996, the order of the Court of Common Pleas of Delaware County, dated May 11, 1995, No. 94–07010, is reversed.

KELLEY, J., dissents.

KELLEY, Judge, dissenting.

I respectfully dissent. While recognizing that a tax statute should be strictly construed against the government, the majority herein concludes that the order of the trial court should be reversed because the school district's parking lot tax is a transaction tax permitted by the LTEA. I disagree.

As correctly stated by the majority, the difference between a business privilege tax and a transaction tax is the stated subject of the tax and how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is "far more than the sum of transactions ... performed within the territorial limits of the taxing au-

thority." *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 109, 511 A.2d 1321, 1326 (1986). A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.

In this case, the language of the School District Resolution imposing the Parking Lot Tax is indicative of a business privilege tax on the gross receipts of the parking lots. The resolution provides for a tax of 6% imposed upon the "fees paid for all transactions *in and for the parking* of automobiles or motor vehicles on commercial parking lots.... Such tax shall be due ... by any person conducting and/or operating such parking lot." (Emphasis added.) For the purposes of the School District's Resolution, "all transactions" is synonymous with "gross receipts"; *i.e.*, a tax on the fees of all transactions in the parking lots *is* a tax on gross receipts.

Moreover, the School District Resolution imposes the tax upon "*all* transactions in and for the parking of automobiles...." If a tax is imposed on the fee for every transaction, there is no transaction free from tax. If no transaction is free from tax, then the only possible interpretation of the Resolution is that it is a tax on gross receipts.

This interpretation is further supported by the fact that the Parking Operators not only provide their patrons with parking spaces in their commercial parking lots, but also provide them with valet service to and from the airport. Stipulation of Facts, p. 129a. The fee for the valet service is included in the overall fee charged. Therefore, the tax is not imposed merely upon the transaction of simply parking a car in the parking lot. The tax is also imposed upon that portion of the parking fee which may be allocated towards the airport valet service.[1]

---

**1.** This fact is also fully corroborated by the testimony in the supersedeas motion in which witnesses from all five Parking Operators testified

that their fees include airport valet service. June 27, 1994 Hearing, Notes of Testimony at 14–15, 40–41, 54, 60, 69–70.

In addition, the language of the School District Resolution closely tracks the language of the Tinicum Township Resolution which imposed "a tax of six percent (6%) of the gross receipts from all transactions in and for the parking of automobiles or motor vehicles on parking lots ... Such taxes shall be due to the Township of Tinicum by any person conducting and/or operating such parking lot." Reproduced Record (R.) at 29a–30a. The similarity between the two resolutions is further evidence of the school district's intention of imposing a tax on the gross receipts of the parking lots.[2] Merely removing the words "gross receipts" does not change the nature of the tax imposed. Clearly, the school district intended to adopt a parking lot tax substantially similar to the Tinicum Township parking lot tax.

Further, the incidence of the tax is made to fall upon the operator of the parking lot, not the patron. Under the Resolution, the parking operator is required to show

> the revenues derived from the operation of the parking lot for the preceding month, computing the tax due for the preceding month and at the same time shall pay over to the School District the entire amount of the tax due for that month. (R. at 25a.)

The Resolution contains no language which indicates that the parking operators merely collect the taxes from the parking lot patrons and pay them over to the school district as was the case in *Airway Arms, Inc. v. Moon Area School District*, 498 Pa. 286, 446 A.2d 234 (1982). In *Airway Arms*, the tax resolution expressly imposed the parking tax upon each and every patron for each and every parking transaction and the parking operator

was to pay over such taxes due that were obtained from the patrons. It is clear from the language of the School District Resolution that the Parking Operators are the taxpayers, not their patrons, and that the tax is imposed not upon the transaction of a patron parking a car but upon the privilege of doing business in the district as measured by the gross receipts of the parking lots.

Both the language of the Resolution adopted by the school district and the school district's actions in announcing its intention to adopt the resolution indicate that the tax was imposed upon the gross receipts of the parking lots. The fact that the school district's tax may have been more "artfully written", as opined by the majority, does not justify the imposition of the tax as a transaction tax pursuant to the LTEA. Therefore, I would hold that the school district Parking Lot Tax is an impermissible business privilege tax upon the gross receipts of the parking lots.

Accordingly, I would affirm the order of the trial court which held the Parking Lot Tax invalid pursuant to section 533 of the Reform Act, 72 P.S. § 4750.533.

---

2. Further evidence of the school district's intentions is the public notices it published to announce its intention to adopt the Resolution. The notices announced that the school district intended to adopt a resolution to impose a 6% tax on the gross receipts of all commercial parking lots located within the boundaries of the School District. R. at 137a.