Philadelphia *v.* Samuels, Appellant.

Sley System Garages *v.* Philadelphia,
Appellant, et al.

Argued January 11, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN and PATTERSON, JJ.

322

*Walter N. Moldawer,* for appellant.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellee.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Marshall A. Coyne,* with him *Gustave F. Straub* and *David J. Smyth,* for appellee.

Opinion by Mr. Justice Linn, March 25, 1940:

These two appeals, argued together, involve the validity of an ordinance of Philadelphia, imposing a tax measured by a percentage of gross receipts from the transaction which takes place when an automobile is parked in an open parking lot.

The city's appeal, No. 307, brings up a proceeding in equity by Sley System Garages, a corporation organized under the General Corporation Act of 1874, P. L. 73, to restrain the city from enforcing the ordinance. A decree restraining the city was affirmed by the Superior Court. On the city's application, this appeal was allowed.

The parking-lot operator's appeal, No. 364, brings up an assumpsit by the city against Samuels to recover tax claimed under the ordinance; judgment was entered against him for so much of the amount in suit as to which the affidavit of defense was insufficient. He appeals from that judgment.

The power of the city to enforce the ordinance is denied on several grounds to be considered. In section 1 it is provided "That on and after the approval of this ordinance a tax of ten per centum of gross receipts from all transactions in or for the parking of automobiles or motor vehicles on open parking lots in the City of Philadelphia is hereby imposed. Such tax shall be due to the City of Philadelphia by the person or persons, firm or firms, corporation or corporations or other artificial person or persons conducting such open parking lots on or before the fifteenth day of each month, based upon the gross receipts from such transactions during the preceding calendar month and shall be payable into the City Treasury." Provision for collection is made in subsequent sections.

The enabling act[1] on which the city relies for authority

---

[1] The legislative power to delegate the right to tax is settled: see *Blauner's, Inc., v. Phila.*, 330 Pa. 342, 344, 198 A. 889.

to pass the ordinance was approved August 5, 1932, P. L. 45, 53 PS section 4613, sometimes called the Sterling Act. It provides: ". . . the council of any city of the first or second class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect, or provide for the levying, assessment and collection of, such taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city of the first or second class, as it shall determine, except that such council shall not have authority to levy, assess and collect, or provide for the levying, assessment and collection of, any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee. . . . It is the intention of this section to confer upon cities of the first and second classes the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license, subject only to the foregoing provision that any tax upon a subject which the Commonwealth may hereafter tax or license shall automatically terminate upon the effective date of the State act imposing the new tax or license fee."[2]

The law dealing with taxation is often illogical and arbitrary and the use of words in different senses results in confusion. The revenue difficulties of the City of Philadelphia during recent years are well known and are spread over the records and reported cases of this court. It is matter of common knowledge that frequent appeals on behalf of the city were made to the legislature. The Act of 1932 was an expression of the legislative intention to increase the taxing power of the city. It must be conceded that in delegating the power to tax (1) a privilege (2) a transaction (3) subject (4) occu-

[2] This Act was considered in *Peoples Natural Gas Co. v. Pittsburgh,* 317 Pa. 1, 175 A. 691.

pation (5) personal property, more specific definition might in some instances have resulted in greater certainty of the interpretation intended. Out of the classes mentioned in the act, "transaction" is the word now for special consideration because that is the word used in the ordinance. The legislature expressly provided that the city should not tax what the state was then taxing and that the right of the city to collect a tax should cease if the state subsequently taxed the same thing.

As the Sley System Garages is a corporation and challenges the ordinance on the ground that the corporation pays certain state taxes and therefore cannot be taxed by the city, we begin with the state of the law when the legislature passed the enabling act. The Capital Stock tax was then familiar, and we think it must have been generally understood that the corporation's liability to a capital stock tax would not prevent the city from taxing corporate transactions merely because the gains or losses from such transactions would be reflected in the value of the capital stock. The stock tax is a tax on property; the tax imposed by the ordinance is an excise tax. Nor is the tax on the parking transaction in conflict with payment of a mercantile license tax if the operator of the parking lot also deals in automobile accessories.

But the argument continues that by subsequently subjecting corporations to the corporate net income tax[3] the legislature manifested its intention to repeal the power theretofore granted to tax these parking transactions if conducted by corporations; it is certain that the act does not say so and we find nothing from which such intention can be implied.

Taxes are commonly divided into property taxes and excise taxes though the difference between them is frequently disregarded and the names applied in legisla-

---

[3] Act of May 16, 1935, P. L. 208, as amended, 72 PS section 3420a et seq.

tion are not always consistent or conclusive. This court is committed to the view that the corporate net income tax is a property tax.[4] The tax imposed by the ordinance is an excise tax and therefore cannot be in conflict with the state act taxing property. What the ordinance taxes is the "transaction", the activity specified in the enabling act; it is the transaction that results when one parks his car in an open parking place, whether conducted by a corporation as in appeal No. 307, or by an individual as in appeal No. 364. To such a transaction the operator of the parking lot may only become a party in virtue of a license which he must obtain from the city; and the ordinance provides that if he fails to comply with its terms he shall forfeit his right to participate in such transactions. As the validity of the transaction is conditioned on the operator's setting aside for the city the tax imposed as one of the conditions of conducting the transaction within the city limits, it is clearly an excise tax; the effect of the ordinance on the corporate income tax act is so remote and incidental that the legislature cannot have intended, by passing the corporate net income tax act, to set aside the ordinance: *Blauner's, Inc., v. Philadelphia*, 330 Pa. 342, 198 A. 889. The decision in *Peoples Natural Gas Co. v. Pittsburgh*, 317 Pa. 1, 175 A. 691, relied on by Sley System Garages, does not support its argument; in that case the ordinance specifically taxed the "meters or other measuring devices", and we held that as this was a tax on property it belonged to the class which, under the Sterling Act, the city could not tax.

Another contention is that the ordinance is bad as discriminating against open parking places in favor of closed garages engaged in parking. It has not been shown that the municipal legislature did not have rea-

---

[4] See *Kelley v. Kalodner*, 320 Pa. 180, 186, 181 A. 598; *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37; *Blauner's, Inc., v. Philadelphia*, 330 Pa. 342, 345, 198 A. 889.

sonable ground for separating open parking lots from closed garages and placing them in separate classes for the purpose of taxing the parking transaction in the open lot. The growth of such parking in recent years is matter of common knowledge of which the courts take notice. Generally, the operation of such lots involves more extensive use of sidewalk and street than is involved in the operation of the closed garage; land occupied by a closed garage is assessed at the value of the land and buildings, whereas the open parking lot is assessed without buildings or buildings of negligible value. Other elements of the same general character suggest themselves. In such circumstances the court cannot say that the the municipal authorities had not sufficient reason for the classification.

Little need be said on the point that the ordinance is confiscatory. The state expressly authorized the city to levy taxes for general revenue purposes and the ordinance so provides. There is nothing in the record to show that the rate imposed by the ordinance is so high as to result in taking property without due process. The probability is that, in effect, the tax will be passed on to patrons, but if it is not, and if an occasional operator cannot afford to continue in business and pay the tax, it may be unfortunate but will not render the ordinance invalid.

At No. 307 the judgment of the Superior Court, affirming the decree of common pleas No. 1 of Philadelphia County, is reversed and the record is remitted to the common pleas with instructions to dismiss the bill of complaint at plaintiff's costs.

At No. 364 the judgment appealed from is affirmed.

Mr. Justice MAXEY did not participate in the decision of these appeals.