## Philadelphia *v.* Broomall, Appellant.

Argued March 22, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Edwin S. Henry, Jr.*, with him *C. Walter Randall, Jr.*, and *Saul, Ewing, Remick & Saul*, for appellant.

*Levy Anderson*, First Deputy City Solicitor, with him *Lawrence Prattis*, Assistant City Solicitor, and *David Berger*, City Solicitor, for appellee.

OPINION BY WOODSIDE, J., April 11, 1957:

Philadelphia has an ordinance which imposes "a tax of ten per centum of gross receipts from all transactions in or for the parking of automobiles or motor vehicles on open parking lots in the City of Philadelphia." This ordinance, imposed under the authority of the Act of August 5, 1932, P. L. 45, 53 PS §4613, is constitutional. *Philadelphia v. Samuels*, 338 Pa. 321, 12 A. 2d 79 (1940).

During the years 1951 and 1952 Caspar J. Broomall, the defendant in this case, operated an open

parking lot in the City of Philadelphia. He filed reports as required by the above ordinance, and timely paid the tax which these reports showed to be due. After the city had audited his books, it claimed he had gross receipts which he had not reported, and brought this action in assumpsit against him to recover the tax on these alleged receipts.

The Municipal Court of Philadelphia, after hearing the matter on complaint, answer, and stipulation of facts, entered judgment for the city in the amount of its claim.

Broomall did not report $580 received by him in 1951 and 1952 from a church and a restaurant for the unrestricted privilege of using his premises for parking on Sundays, when the lot was unattended. The tax on these sums was included in the city's claim, and the defendant now admits liability for this tax. He denies liability on the balance of the city's claim which related to automobiles parked on his lot by the customers of his landlord under the provisions of a lease agreement.

The Pennsylvania Company for Banking and Trusts owned the parking lot and leased it to the defendant by a lease agreement which provided, inter alia, as follows:

"32. Lessee shall reserve for the parking of automobiles of customers of the Lessor, during the term of this lease and all renewals thereof, from 8 A.M. to 4 P.M., Monday through Friday, excluding legal holidays, that portion of the demised premises consisting of the entire frontage on Lehigh Avenue to a depth of ninety (90) feet.

"It is agreed between the parties hereto that customers of the Lessor shall return to the Lessee or his employees their parking tickets stamped by an employee of said Lessor, permitting such customers to

park without charge for one-half hour, or for such longer period as an official representative of the Lessor shall designate.

"It is further agreed that in the event an automobile is parked in the reserved space herein referred to for two hours or longer, Lessee or his employees shall remove it to another location in the demised premises."

The rental was determined as follows:

"29. Lessee agrees to pay to Lessor as percentage rental hereunder a sum representing fifty percent (50%) of the gross income arising out of the operation of the automobile parking lot occupying the demised premises. Gross income as stated herein, shall represent the total sum of all receipts covering parking fees, whether on a daily, weekly or monthly basis as well as sums received for washing or polishing cars. Lessee also agrees to pay as additional rent, the amount of city sales taxes which may be levied against Lessor by reason of the use of the said premises by Lessee as an outdoor parking place for motor vehicles.

"Lessor agrees to permit Lessee to take as a credit against sums due Lessor as rent, the sum of ten cents ($.10) for each automobile parked by a customer of Lessor, as evidenced by the return of a parking ticket duly stamped in an identifying manner by one of Lessor's employees. It is agreed between the parties hereto that no such credit shall be allowed where the usual parking fee is collected from a customer of Lessor by reason of the customer parking longer than a half-hour period."

Under the terms of the lease agreement 55,621 automobiles of the customers of The Pennsylvania Company were parked on the lot in 1951, and 56,232 in 1952. Independently of these automobiles Broomall had cash receipts from individual parking customers

in the amount of $4867.55 in 1951 and $5568.75 in 1952.

The question before us is whether the above ordinance imposed a tax upon the sum of 55,621 times 10¢ for 1951 and 56,232 times 10¢ for 1952, calculated by the city as a credit on the rent of Broomall, or, in other words, whether the sum calculated as above constitutes a "gross receipt" of the taxpayer as the term is used in the ordinance.[1]

Provisions imposing taxes are to be strictly construed, and any doubt as to the imposition of a tax should be resolved against the taxing authorities. Section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558; *Kohn v. Philadelphia,* 151 Pa. Superior Ct. 635, 30 A. 2d 672 (1943); *Fischer v. Pittsburgh,* 178 Pa. Superior Ct. 16, 21, 112 A. 2d 814 (1955); *Barber's Estate,* 304 Pa. 235, 240, 155 A. 565 (1931); *Pittsburgh Milk Co. v. Pittsburgh,* 360 Pa. 360, 364, 62 A. 2d 49 (1948); *Panther Valley Television Co. v. Summit Hill,* 376 Pa. 375, 377, 102 A. 2d 699 (1954).

It is true, as the city solicitor argues, that the imposition of the tax is not limited to gross receipts received from *cash* transactions. The tax is, however, imposed only upon receipts. We think that which the city refers to as defendant's "credit" on his rent is not in fact a part of the defendant's receipts.

The Pennsylvania Company had title to the parking lot in question. If it had permitted its customers to park on this land without charging any fee, it would not have been liable for any tax under the ordinance.

---

[1] As the sum thus calculated appears to exceed the rent due to the landlord, the sum upon which the tax was imposed by the city is greater than the credit received by the taxpayer from his landlord. This, however, is not important in the light of our final determination of this matter.

When it leased the premises to the defendant, it specifically reserved certain rights in the premises, thereby limiting the tenancy of the defendant. Item 32 of the lease agreement required the tenant to reserve a specific area at certain times for the use of the landlord's customers.

Item 29 of the lease agreement taken as a whole determines the amount of rent which the defendant is to pay. It is to be composed of 50% of the gross income arising out of the operation of the lot, less 10¢ for each automobile parked by a customer of the lessor for less than a half hour.

The bank's customers paid no parking fee either to the bank or to the defendant. Nor did the bank owe the defendant a parking fee for its customers. No fee was collected by the defendant from the bank. The agreement did not contemplate the collection of any such fee.

As we view it, the landlord limited the tenancy of the defendant, and reserved to itself a right of occupancy for its customers, the extent of which occupancy could not be definitely determined at the time the lease agreement was executed. The rent was, therefore, adjusted to a sum determined by the extent of use which the landlord made of this reserved right in its real estate.

We have searched in vain, both within and outside of the Commonwealth, for a case which would throw light upon our present problem. There are numerous cases dealing with "gross receipts", but we found none with facts analogous to those in this case. Among the cases which dealt with a problem having some elements of similarity to this case, are those relating to the credit of dividends on premiums due insurance companies subject to a gross receipts tax.

The appellee cites as one of these cases, *New York Life Insurance Co. v. Wright,* 31 Ga. App. 713, 122 S.E. 706 (1924), in which it was held that "gross receipts" included dividends credit toward premiums due from policyholders even though no cash changed hands. But this is not the Pennsylvania rule.

In *Commonwealth of Pennsylvania v. Penn Mutual Life Insurance Co.,* 252 Pa. 512, 97 A. 677 (1916), the Supreme Court of this state held that "gross receipts", as used in our taxing statute, did *not* include dividends payable to the policyholders, and actually credited upon the premiums payable by them. See also *Commonwealth v. Metropolitan Life Insurance Co.,* 254 Pa. 510, 98 A. 1072 (1916). Furthermore, Pennsylvania and not Georgia, follows the majority rule. *Metropolitan Life Insurance Co. v. State,* 194 Ind. 657, 144 N.E. 420 (1924).

Another case having some elements of similarity to the case before us is *Herbert's Laurel-Ventura, Inc. v. Laurel Ventura Holding Corporation,* 58 Cal. App. 2d 684, 138 P. 2d 43 (1943), in which it was held that "Where lease of premises operated as drive-in cafe provided for payment of percentage of tenant's 'gross receipts' as rent, but authorized tenant to deduct from such receipts all meals served to tenant's employees, tenant was not required to add such prices to such receipts in computing rent."

It is admitted by defendant in the instant case that a tax is due upon $580 receipts not returned by him. For the reasons set forth above we think this is the limit of his liability to the city under its present complaint.

The case is remanded to the court below for the entry of judgment in favor of the plaintiff and against the defendant in the amount of $58 plus penalty and interest. Costs of the appeal to this Court to be paid by the city; other costs to be paid by the defendant.