735 A.2d 646

**AIRPARK INTERNATIONAL I t/a Park–N–Go and Colonial Airport Parking, Inc. and Rama Construction Co., Inc. and 621 North Governor Printz, Inc. t/a Rosenbluth International and 621 North Governor Printz Boulevard and Smart Park, Inc., et al., Appellants,**

v.

**INTERBORO SCHOOL DISTRICT, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1997.

Decided July 21, 1999.

Reargument Denied Oct. 29, 1999.

2

Richard H. Martin, Philadelphia, for Airpark Intern., et al.

Thomas L. Kelly, Media, for Interboro School Dist.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Commonwealth Court is hereby affirmed.

Justice ZAPPALA files an Opinion in Support of Affirmance in which Justice CAPPY and Justice NEWMAN join.

Justice NIGRO files an Opinion in Support of Reversal in which Chief Justice FLAHERTY and Justice CASTILLE join.

## OPINION IN SUPPORT OF AFFIRMANCE

ZAPPALA, Justice.

This is an appeal by allowance from an order of the Commonwealth Court, reversing the order of the Delaware County Court of Common Pleas. For the following reasons, I would affirm.

Appellants, Airpark International I, Colonial Airport Parking, Inc., Rama Construction Co., Inc, 621 North Governor Printz, Inc., and Smart Park, Inc., operate commercial parking lots in Tinicum Township, which lies within Interboro School District. On May 18, 1994, the School District adopted a "Resolution to Adopt Parking Lot Tax" pursuant to Section 2 of the Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6902.[1] Paragraph 3 of the Resolution provides

[A] tax of six (6%) percent shall be levied and imposed upon the fees paid for all transactions in and for the parking of automobiles or motor vehicles on commercial parking lots within the boundaries of the Interboro School District.

Appellants challenged the District's parking lot tax in the Court of Common Pleas of Delaware County.[2] Based on a stipulation of facts by the parties, the court held that the District's parking lot tax was a business privilege tax on gross receipts enacted after 1988, in violation of Section 533 of the Local Tax Reform Act, Act of December 13, 1988, P.L. 1121, 72 P.S. §§ 4750.101–4750.3112.[3] The Commonwealth Court reversed, finding the District's parking lot tax to be a transaction tax not violative of the Reform Act. *Airpark Interna-*

1. Section 2 of the LTEA provides in pertinent part:
   The duly constituted authorities of the following political subdivisions, ... school districts of the second class, ... third class, and ... fourth class, ... may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property.
   53 P.S. § 6902.

2. Appellants objected to the parking lot tax on several grounds, claiming violations of: (1) the Reform Act; (2) the Equal Protection and Uniformity Clauses of the United States Constitution; (3) the Commerce Clause of the United States Constitution; and (4) the LTEA itself.

3. Section 533(a) of the Reform Act provides:
   After November 30, 1988, and notwithstanding any other provision of this act except for subsection (b), no political subdivision may levy, assess or collect or provide for the levying, assessment or collection of a mercantile or business privilege tax on gross receipts or part thereof.
   72 P.S. § 4750.533(a).

*tional, et al. v. Interboro School District,* 677 A.2d 388 (Pa. Cmwlth.1996). This appeal followed.

Appellants argue that the Commonwealth Court erred in determining that the District's parking lot tax is a permissible transaction tax authorized by the LTEA which does not violate the Reform Act. I disagree.

As aptly stated by the Commonwealth Court below:

The difference ... between a business privilege tax and a transaction tax is not just the stated subject of the tax, but how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is "far more than the sum of transactions ... performed within the territorial limits of the taxing entity." [*Gilberti v. City of Pittsburgh,* 511 Pa. 100, 109, 511 A.2d 1321, 1326 (1986) ] A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.

677 A.2d at 392. The Commonwealth Court went on to properly conclude that because the subject of the District's parking lot tax is "the fees paid for all transactions in and for the parking of automobiles" and the measure of the District's parking lot tax is six percent of "the fees paid," the District's parking lot tax therefore

only taxes parking transactions within the District, and neither purports to tax nor does it effectively tax the privilege of doing business in the School District, because it does not refer to the privilege as the subject of the tax and the tax is not measured on all gross receipts of the Parking Operators.

*Id.*

The dissent below opined that "[i]f a tax is imposed on a fee for every transaction, there is no transaction free from the tax.

If no transaction is free from tax, then the only possible interpretation of the Resolution is that it is a tax on gross receipts." *Id.* at 396 (Kelley, J., dissenting). Although superficially appealing, this analysis ultimately fails. The majority cogently discredited this argument, stating:

That the Parking Operators in this case have no receipts other than the gross receipts from the taxed parking transactions does not make the Resolution a business privilege tax on gross receipts. Other parking lots in the School District presently or in the future could have receipts from other transactions, such as from transportation to the airport or car washes upon the owner's return, which would be taxed under a business privilege tax but not under the transaction tax imposed.

*Id.* at 393.

Moreover, the characterization of the District's parking lot tax as a business privilege tax, based solely on its effect on a particular taxpayer, would yield absurd results if applied consistently in the area of taxation. Under such reasoning, the mere fact that a merchant, who happens to sell only consumer goods that are subject to the state sales tax, ultimately pays a state sales tax equivalent to a 6% tax on gross receipts, would transform the state sales tax into a business privilege tax. Clearly, such a result is untenable.

The Commonwealth Court's analysis is sound. The District's parking lot tax is not a tax for the privilege of doing business in the District.[4]

I further note that this conclusion is consistent with this Court's opinion in *City and County of Philadelphia v. Samu-*

---

**4.** The Opinion in Support of Reversal finds that the District's parking lot tax is consistent with "the School District's published intention ... to impose a tax on gross receipts of commercial parking lots." (Opinion in Support of Reversal at 653). However, the Resolution, as adopted by Interboro School District, does not impose a tax on the gross receipts of commercial parking lots, but rather on the "fees paid for all *transactions in and for the parking of automobiles or motor vehicles* on commercial parking lots...." The published intention, which predates the Resolution itself, is of no moment as the sole issue in this case is whether the Resolution violates the Reform Act, not whether the "published intention" would have violated the Reform Act.

*els,* 338 Pa. 321, 12 A.2d 79 (1940). *Samuels* dealt with a challenge to a Philadelphia parking lot tax. The text of the Philadelphia parking lot tax at issue in *Samuels* provided:

> That on or after the approval of this ordinance *a tax of ten per centum of gross receipts from all transactions in or for the parking of automobiles* or motor vehicles on open parking lots in the City of Philadelphia is hereby imposed.

338 Pa. at 323, 12 A.2d at 81 (emphasis added).[5] The issue presented in *Samuels* was whether, by enacting a corporate net income tax, the legislature manifested its intention to repeal the power of municipalities to tax parking lot transactions. Answering that inquiry in the negative, this Court held that Philadelphia's parking lot tax was a transaction tax:

> What the ordinance taxes is the "transaction", the activity specified in the enabling act; it is the transaction that results when one parks his car in an open parking place. . . .

*Id.* at 326, 12 A.2d at 82.

The Opinion in Support of Reversal contends that because this Court has, in another context, characterized a parking lot tax as a business privilege tax, *see Mellon Square Garage, Inc. v. Public Parking Authority,* 442 Pa. 229, 275 A.2d 654 (1971), an ambiguity in the jurisprudence of this Court exists with regard to classification of this type of tax, mandating strict construction of the Resolution against Appellee, Interboro School District. I cannot agree.

While it must be conceded that at first blush, this Court's decisions in *Samuels* and *Mellon Square* appear diametrically opposed, the cases can be read in a sense which harmonizes their respective holdings.

---

**5.** Although the words "gross receipts" appear in the text of the parking lot tax in *Samuels* and not in the text of the District's parking lot tax, the tax in *Samuels* does not apply to gross receipts in general. Rather, the tax applies to a limited class of gross receipts: "gross receipts from all transactions in and for the parking of automobiles." Thus, despite the varying texts, the tax in *Samuels* is virtually identical to the District's parking lot tax—the only difference being the rate at which the parking transactions are taxed.

The text of the Pittsburgh parking lot tax at issue in *Mellon Square* provided:

> [A] tax for general revenue purposes ... upon all transactions of each operator with respect to each commercial parking place, *at the rate of ten per cent (10%) of the gross receipts from all such transactions received* upon and after the effective date of this ordinance....

442 Pa. at 231–232, 275 A.2d at 656 (emphasis added).[6] The issue presented in *Mellon Square* was whether, for purposes of computing rent due under a sublease between the parties, the Pittsburgh parking tax ordinance constituted a "sales or other similar tax."[7] In holding that the parking tax did not constitute a "sales or other similar tax," this Court characterized the Pittsburgh parking tax ordinance as follows:

> The parking tax is imposed on "... all transactions of each operator ..." and is computed by taking a fixed percentage of the "gross receipts." We believe the ordinance more closely resembles a tax on the privilege of doing business than one on the sales of each parking space.

*Id.* at 233, 275 A.2d at 657.

It thus ostensibly appears that this Court, in examining two taxing ordinances virtually identical to the District's parking lot tax in this case, has reached opposite conclusions, finding the parking lot tax in *Samuels* to be a transaction tax, and the parking lot tax in *Mellon Square* to be a business privilege tax. However, upon closer inspection it is evident that the holdings in *Samuels* and *Mellon Square* can be read together.

In *Samuels*, the issue presented was whether, by enacting a corporate net income tax, the legislature manifested its intention to repeal the power of localities to tax parking lot transactions. The analysis was akin to that of a "double

---

**6.** Like *Samuels* (*see supra*, note 5), the tax in *Mellon Square* is virtually identical to the District's parking lot tax, despite the varying texts—the only difference again being the rate at which the parking transactions are taxed.

**7.** The rent due under the sublease was calculated based on the lessee's gross receipts, but a deduction was allowed for "sales or other similar tax" paid.

taxation"[8] case, requiring a comparison of the operation and incidence of the two taxes.[9] After examining Philadelphia's parking lot tax and the state corporate income tax, this Court held that the parking lot tax was a transaction tax with an effect on the corporate income tax "so remote and incidental that the legislature cannot have intended, by passing the corporate net income tax act, to set aside the [parking lot tax] ordinance." 338 Pa. at 326, 12 A.2d at 82.

Although it may appear that this Court failed to follow the *Samuels* holding in *Mellon Square* by stating that Pittsburgh's parking lot tax "more closely resembles" a business privilege tax, like the Commonwealth Court below I find that statement to be a superfluous characterization and thus *obiter dictum*. *See* 677 A.2d at 393 n. 12. The narrow issue presented in *Mellon Square* was whether Pittsburgh's parking lot tax was a "sales or other similar tax." The unfortunate mischaracterization of the tax as "more closely resembl[ing]" a business privilege tax[10] was unnecessary to the holding that the tax was not a "sales or other similar tax." *Accord Airway*

8. Claims of double taxation typically arise in the context of a taxpayer claim that a local taxing authority has duplicated an existing tax levied by the state and has thus exceeded its power under the enabling statute permitting it to enter tax fields not occupied by the state. *See, e.g., National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953).

9. "In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time in describing taxes in various cases. The incidence of a tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative." *Commonwealth v. National Biscuit Co.,* 390 Pa. 642, 652, 136 A.2d 821, 825–826 (1957).

10. The mischaracterization is analogous to the error of the Opinion in Support of Reversal in focusing too much attention on the red herring in this case—the words "gross receipts." I believe that this Court's imprecise statement in *Mellon Square* that Pittsburgh's parking lot tax was "computed by taking a fixed percentage of the 'gross receipts,'" when in fact the tax was computed by taxing a fixed percentage of "the gross receipts from all such [parking lot] transactions," provides a clear example of how "[t]he law dealing with taxation is often illogical and arbitrary and the use of words in different senses results in confusion." *Samuels,* 338 Pa. at 324, 12 A.2d at 81.

*Arms, Inc., et al. v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982).

Thus, the *holding* in *Mellon Square,* that Pittsburgh's parking lot tax was not a "sales or other similar tax," does not conflict with the *holding* in *Samuels,* that Philadelphia's parking lot tax was a transaction tax that was not duplicative of the corporate net income tax. Therefore, no ambiguity exists with regard to this Court's decisions in *Samuels* and *Mellon Square.*[11]

Finally, I do not share the Opinion in Support of Reversal's concern that "local taxing authorities could avoid the Local Tax Reform Act's prohibition on business privilege taxes based on gross receipts and levy the equivalent tax under a different label," thereby undermining "the legislature's intent to prohibit political subdivisions from enacting business privilege taxes measured by gross receipts." (Opinion in Support of Reversal at 654). Rather, I find much more objectionable the result which follows from the analysis of the Opinion in Support of Reversal; that is, taxpayers could avoid payment of transactional taxes by setting up separate entities, each involved in different, singular types of transactions, and then claiming that one of those entities has been unlawfully subjected to a business privilege tax on gross receipts in violation of the Reform Act, simply because for that one entity "there is no transaction free from the tax."

The Reform Act prohibits the taxing authority from taxing the privilege of conducting business in the District. It does not prohibit the taxing authority from taxing parking transactions.

11. Even assuming *arguendo* that the holdings are ambiguous, I must still disagree with the Opinion in Support of Reversal that we must on this account strictly construe the Resolution against the taxing authority. (Opinion in Support of Reversal at 653). The supposed ambiguity does not exist with regard to the subject matter of the taxation. Rather, the supposed ambiguity exists between the Resolution and the Reform Act. It would thus not be a matter of resolving an ambiguity in the tax itself, requiring strict construction in favor of the taxpayer, but instead resolving an ambiguity as to legislative intent in relation to the Reform Act, requiring guidance from the Rules of Statutory Construction.

Because I conclude that the Interboro School District's parking lot tax is a permissible transaction tax authorized by the LTEA which does not violate the Reform Act, I would affirm the order of the Commonwealth Court.

Justice CAPPY and Justice NEWMAN join this Opinion in Support of Affirmance.

### OPINION IN SUPPORT OF REVERSAL

NIGRO, Justice.

Appellants Airpark International I, Colonial Airport Parking, Inc., Rama Construction Co., Inc., 621 North Governor Printz, Inc., and Smart Park, Inc. challenge the validity of a tax levied by Interboro School District. The trial court held that the tax is invalid and the Commonwealth Court reversed. For the reasons set forth below, I would reverse the decision of the Commonwealth Court.

Appellants operate commercial parking lots in Tinicum Township which lies within Interboro School District. They provide parking and shuttle transportation service to patrons who are primarily travellers using the Philadelphia International Airport. In order to meet its budget requirements, the School District decided to levy a tax on commercial parking lots under The Local Tax Enabling Act, 53 Pa. Stat. § 6902 (1997).

Pursuant to The Local Tax Enabling Act, 53 Pa. Stat. § 6904, on April 27 and May 4, 1994, the School District published a Notice of Intention to Adopt Parking Lot Tax. In the notice, the Borough stated that it "intends to adopt a resolution to impose [a] six (6%) percent tax on the gross receipts of all commercial parking lots located within the boundaries of the School District...." Stipulation of Facts Nos. 20, 21, Exhibit P-2. On May 18, 1994, the School District enacted a Resolution to Adopt Parking Lot Tax (Resolution) stating

... a tax of six (6%) percent shall be levied and imposed upon the fees paid for all transactions in and for the parking of automobiles or motor vehicles on commercial parking lots

within the boundaries of the Interboro School District (School District). Such tax shall be due to the School District by any person conducting and/or operating such parking lot.

Stipulation of Facts Nos. 18, 19.[1]

Appellants filed a statutory appeal challenging the validity of the School District's tax under The Local Tax Enabling Act, 53 Pa. Stat. § 6906. Appellants asserted that the tax is prohibited by the Local Tax Reform Act, 72 Pa. Stat. § 4750.533 (1995), that the tax violates the United States and Pennsylvania constitutions, and that the tax is excessive and unreasonable.

After a hearing where the parties submitted a Stipulation of Facts and related exhibits, the trial court held that the tax is a business privilege or mercantile tax on gross receipts and as such, violates the Local Tax Reform Act. Since the court found the tax invalid on this basis, it did not address Appellants' other arguments. The School District appealed.

In a 2–1 decision, the Commonwealth Court disagreed with the trial court's characterization of the tax. It held that the tax is a transaction tax and does not violate the Local Tax Reform Act. The Commonwealth Court addressed Appellants' additional arguments and further held that the tax does not violate constitutional requirements and is not excessive or unreasonable. The dissenting judge believed that the trial court correctly concluded that the tax is an impermissible business privilege tax.

This Court granted Appellants' Petition for Allowance of Appeal limited to the issues of (1) whether the Commonwealth Court erred in characterizing the School District's tax as a transaction tax; and (2) whether the Commonwealth Court's decision undermines the intent of the Pennsylvania Legislature, expressed in the Local Tax Reform Act, to prohibit

1. Effective January 1, 1990, Tinicum Township also levies a tax on six percent of Appellants' gross receipts from all parking transactions. Stipulation of Facts, Exhibit B.

political subdivisions from enacting business privilege or mercantile taxes measured by gross receipts.

Initially, I note the general principle that tax laws are to be strictly construed and, in cases of doubt, the construction should be against the government. *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 106, 511 A.2d 1321, 1324 (1986); *Penn Traffic Co. v. City of Dubois*, 156 Pa.Commw. 107, 110, 626 A.2d 1257, 1259, *appeal denied*, 536 Pa. 634, 637 A.2d 294 (1993). In determining the validity of a tax measure, courts will not rely upon labels but will examine the nature of a tax. *See Gaugler v. City of Allentown*, 410 Pa. 315, 317, 189 A.2d 264, 265 (1963).

The Local Tax Enabling Act authorizes the School District, at its discretion, to levy taxes on persons, transactions, occupations, privileges, subjects and personal property by ordinance or resolution. *See* 53 Pa. Stat. § 6902. At the same time, the Local Tax Reform Act prohibits the assessment of business privilege taxes. It provides:

> After November 30, 1988, . . . no political subdivision may levy, assess or collect or provide for the levying, assessment or collection of a mercantile or business privilege tax on gross receipts or part thereof.

72 Pa. Stat. § 4750.533(a). Appellants maintain that the School District's Resolution imposes a business privilege tax. The School District states that its tax is a permissible transaction tax under The Local Tax Enabling Act.

A business privilege tax is a tax levied on the privilege of engaging in business in a locality and is measured by the gross receipts collected from conducting business. *See, e.g., Gilberti*, 511 Pa. 100, 511 A.2d 1321 (defining gross receipts for firm engaged in business inside and outside taxing district); *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971)(upholding City's power to impose business privilege tax under Local Tax Enabling Act).

In *Mellon Square Garage, Inc. v. Public Parking Authority*, 442 Pa. 229, 233, 275 A.2d 654, 657 (1971), the Supreme Court found a tax similar to the School District's tax akin to a

business privilege tax. The issue presented was whether a tax on gross receipts from all transactions of commercial parking lot operators was a sales tax for purposes of computing Mellon Square Garage's rent. Mellon Square Garage paid rent to the Pittsburgh Parking Authority based upon a percentage of its gross receipts less any sales taxes it collected for the City of Pittsburgh.

The Supreme Court considered whether the tax was a sales tax or was akin to a business privilege tax. Since the tax was imposed on all transactions and was computed by taking a fixed percentage of the gross receipts, the Court held that it was not a tax on the sale of each parking space. *Id.* In so holding, the Court stated that it resembled a tax on the privilege of doing business. *Id.* While not dispositive of the issue in the present case, *Mellon Square Garage* supports that the School District's tax is a business privilege tax. It is similarly imposed upon all transactions and, as discussed further below, is computed by taking a fixed percentage of Appellants' gross receipts.

There is also authority supporting that the School District's tax is a transaction tax. In *City and County of Philadelphia v. Samuels*, 338 Pa. 321, 324–26, 12 A.2d 79, 81–82 (1940), the Supreme Court found a tax levied upon the gross receipts from all transactions for parking valid under a statute granting cities of the first class the power to levy taxes on persons, transactions, occupations, privileges, subjects and personal property. The Court distinguished the tax from a property tax. *Id.* It explained that the tax was levied on the parking transaction—an activity specified by statute as taxable—and that the transaction's validity was conditioned on the operator's setting aside the tax for the City. *Id. Samuels* supports that the similar tax in the present case is a transaction tax.[2]

---

**2.** *See also Airway Arms, Inc. v. Moon Area School Dist.*, 498 Pa. 286, 446 A.2d 234 (1982)(plurality)(in upholding the constitutionality of a tax levied upon parking lot patrons, the plurality stated that the incidence of the tax is the parking transaction and its measure is the consideration paid by a patron). Appellants argue *Airway Arms* supports that a tax is a transaction tax when it is levied on the patron and the Resolution here does not expressly levy the tax on their patrons.

Thus, while in other contexts the Court has viewed parking lot taxes like the present one as both a business privilege tax and a transaction tax, it has never addressed a challenge to such a tax based upon a statute prohibiting business privilege taxes measured by gross receipts.[3]

Examining the Resolution currently before the Court, the School District's published intention was to impose a tax on gross receipts of commercial parking lots. Consistent with this intention, the Resolution provides that parking lot operators must pay a six percent tax on the fees paid for all transactions for parking. While the Resolution does not purport to tax the privilege of doing business, it uses the same measure of taxation as that used for a business privilege tax. However, based upon the School District's use of the word transactions in the Resolution, it arguably also can be read as levying a tax on each parking transaction. To the extent an ambiguity exists, the Resolution against the School District must be strictly construed. Since the Resolution operates as a business privilege tax when applied to Appellants, I would find that it is invalid under the Local Tax Reform Act. *See First Federal Savings and Loan Ass'n v. Commonwealth of Pennsylvania*, 515 Pa. 369, 374, 528 A.2d 942, 944 (1987)(in the last analysis, the nature of a tax depends upon its practical operation and effect).

I believe the Commonwealth Court incorrectly found that the Resolution does not tax Appellants' gross receipts. The School District concedes that Appellants have no receipts other than the gross receipts from its parking transactions. Appellee's Brief at 9. Under the specific facts of this case, a tax equal to a percentage of the fees paid for all transactions for parking is a tax equal to a percentage of Appellants' gross

Since the tax in *Samuels* was not expressly levied on patrons, we do not find this factor dispositive of the nature of the tax currently before the Court.

3. In *Cheltenham Township v. Cheltenham Cinema*, 548 Pa. 385, 697 A.2d 258 (1997), the Court recently reviewed a business privilege tax that was levied before the enactment of the Local Tax Reform Act. The statute provides that such taxes are still valid, *see* 72 Pa. Stat. § 4750.533(b), and the present issue was not raised.

receipts.[4] Moreover, in my view, the Commonwealth Court's reliance upon the Court's discussion of business privilege taxes in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986) was misplaced. *Gilberti* held that gross receipts, for purposes of a business privilege tax, include receipts from transactions conducted inside and outside the municipality. *Id.* at 109, 511 A.2d at 1326.[5] The Court did not address differences between a business privilege tax and a transaction tax with respect to a business that only operates within the taxing authority.

Under the facts of this case, I would conclude that the School District may not levy a tax on fees paid for all parking transactions. The School District's Resolution is ambiguous and operates to take a fixed percentage of Appellants' gross receipts.[6] Otherwise, local taxing authorities could avoid the Local Tax Reform Act's prohibition of business privilege taxes based upon gross receipts and levy the equivalent tax under a different label. Such a result would undermine the legislature's intent to prohibit political subdivisions from enacting business privilege taxes measured by gross receipts. Thus, the decision of the Commonwealth Court should be reversed.

Chief Justice FLAHERTY and Justice CASTILLE join this opinion.

---

**4.** As aptly stated in the dissenting opinion below, "[i]f a tax is imposed on the fee for every transaction, there is no transaction free from tax. If no transaction is free from tax, then the only possible interpretation of the Resolution is that it is a tax on gross receipts." *Airpark Int'l I, et al. v. Interboro School District,* 677 A.2d 388, 396 (Pa.Commw.1996).

**5.** In finding that both types of revenue could be taxed, the Court explained that the business used its base of operations within the municipality to manage its transactions outside the municipality. *Id.* In this context, it stated that the privilege of doing business is more than the sum of transactions performed within a municipality. *Id.*

**6.** *Compare Cheltenham Township v. Cheltenham Cinema, Inc.,* 548 Pa. 385, 697 A.2d 258 (1997)(plurality)(business privilege tax not barred where it did not tax the identical subject matter nor was it measured by the same base as a prohibited tax under The Local Enabling Act).