SUSQUEHANNA AREA REGIONAL AIRPORT AUTHORITY, Appellant

v.

MIDDLETOWN AREA SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2006.

Decided March 12, 2007.

Timothy J. Nieman, Harrisburg, for appellant.

Jeffrey D. Litts, Lancaster, for appellee.

BEFORE: COLINS, President Judge,[1] McGINLEY, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Before the Court is the appeal from the decision of the Court of Common Pleas of Dauphin County (trial court) denying the Susquehanna Area Regional Airport Authority's (Authority) "petition for review"[2] and request for a preliminary injunction and/or supersedeas. On April 25, 2005, the Board of School Directors of Middletown Area School District (District), Dauphin County enacted the "Patron Parking Tax Resolution" (resolution), a tax resolution imposing a parking tax on non-resi-

---

1. This case was assigned to the opinion writer prior to the date when President Judge Colins completed his tenure as president judge.

2. Although the original pleading in the trial court is titled "Petition for Review," we must note that it should properly have been titled "Complaint" pursuant to Pa.R.C.P. No. 1017; the term "Petition for Review" applies to appeals made to an appellate court pursuant to Pa.R.A.P. 1501 *et seq.* "Petition for Review" would also apply to actions in Commonwealth Court filed against the Commonwealth.

dential parking transactions that take place within the boundaries of the District. Parking patrons are responsible to pay the tax, equal to 10% of the consideration paid for parking. The parking tax went into effect on June 1, 2005. Paid parking transactions situated within the boundaries of the District and subject to the parking tax include: (1) Harrisburg International Airport (HIA), (2) Middletown Area High School (MAHS), (3) Penn State/Middletown campus (Penn State), and (4) Cramer Airport Parking (Cramer), an offsite parking lot with 765 spaces.

The Authority challenges the legality of the resolution; the Authority operates HIA, including two parking facilities managed by Central Parking of Pennsylvania, Inc., a wholly-owned subsidiary of Central Parking Corporation. One lot is "Smart-Park," a long-term parking lot containing 3,100 parking spaces, and the other is a parking garage with 2,474 parking spaces. Two additional parking facilities are held in reserve for future needs. The Authority receives various forms of federal assistance in the operation of HIA. In exchange for such federal assistance, the Authority is required to abide by certain terms and conditions stipulated by the federal government, primarily through the Federal Aviation Administration. In 2004, the Authority generated revenues totaling nearly $5 million from parking fees, or 84.3% of total estimated parking tax revenues in the District. In 2004, Cramer[3] generated parking fee revenue totaling approximately $700,000. Penn State and MAHS together generated approximately $208,000. Estimated total parking fee revenues from the non-Authority owned parking facilities constitute 15.7% of the total parking tax revenue.

The resolution requires operators to collect the parking tax from the patrons and remit it to the District. In exchange for doing so, the operators are to receive 2% commission. The resolution also allows operators to apply for an exemption from the parking tax collection duties. The Authority was granted an exemption from having to collect the parking tax, but its request that transactions at HIA facilities be exempted from the tax was denied.

In addition to filing its petition for review, the Authority sought to bar the collection of the parking tax during litigation. In June, 2005, a Special Master was appointed by joint agreement of the parties. The Special Master recommended the scheduling of oral argument; oral argument was conducted on September 22, 2005. After oral argument, the trial court, *sua sponte*, determined that a threshold jurisdictional issue, not raised by either party, involving whether or not the Authority has statutory authority and standing to enforce certain federal statutes in the trial court, was required to be addressed as an integral part of the proceedings; both parties submitted supplemental and rebuttal briefs on this issue.

In denying the Authority's petition for review, the trial court ruled that the District's parking tax is legal and fully binding on the parking patrons of the Authority; the trial court noted, however, that the Authority's claims under certain federal aviation acts remain justiciable before the Federal Aviation Administration should the Authority elect to pursue those possible forms of relief in that forum. The trial court also specifically retained full jurisdiction over any issues of tax collection implementation by the District, to "ensure that a reasonable and non-obstructive methodology will be employed by the District on

---

**3.** In March 2005, the Authority filed an eminent domain action against Stanley Cramer, the owner of the property upon which Cramer Airport Parking operates.

the property of the Authority." (June 13, 2006, Opinion of the trial court, p. 65.)

On appeal, the Authority argues that the trial court erred in failing to recognize the illegal nature of the resolution; the Authority avers the discriminatory tax with respect to airport parking violates the federal Constitution, the state Constitution, certain federal aviation statutes, the Local Tax Reform Act of 1988 (Reform Act),[4] and The Local Tax Enabling Act (LTEA).[5]

The Authority first avers that the trial court improperly concluded that there is no private right of action to enforce violations of 49 U.S.C. § 40116 (the "Anti–Head Tax Act" or AHTA) and 49 U.S.C. § 47133 (the "Anti–Revenue Diversion Provision of the Federal Aviation Act" (FAA)) in Pennsylvania courts;[6] the Authority contends that a private cause of action exists under both statutes, and the resolution violates each of them. In concluding that no private right of action exists, the trial court relied on Tenth and Seventh Circuit decisions in *Southwest Air Ambulance v. City of Las Cruces*, 268 F.3d 1162 (10th Cir. 2001) and *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 F.3d 722 (7th Cir.2001); both the Seventh and Tenth Circuits relied on the U.S. Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), where that Court established standards to be used by the courts to determine whether a federal statute contains a private right of action:

[P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Alexander*, 532 U.S. at 286–287, 121 S.Ct. 1511 (citations omitted).

■ The Authority argues, and the trial court acknowledged in its opinion, that there is a split of opinion in the federal circuit courts as to whether the AHTA, which has no provision expressly granting a private cause of action, nonetheless provides a private cause of action by implication. However, we agree with the trial court in its analysis that the reasoning behind *Southwest*, as to why the AHTA has no private cause of action is that the AHTA is encompassed within the FAA. That is the law in our federal Third Circuit, as well as in other federal circuits. See *Wolf v. Trans World Airlines, Inc.*, 544 F.2d 134 (3rd Cir.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). The FAA contains its own comprehensive administrative enforcement scheme to review alleged violations of the

---

4. Act of December 13, 1988, P.L. 1121, 72 P.S. §§ 4750.101–4750.3112.

5. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

6. The "Anti–Head Tax" prohibits state and local governments from levying or collecting "a tax, fee, or charge … exclusively upon any business located at a commercial service airport … other than a tax, fee, or charge wholly utilized for airport and aeronautical

purposes." 49 U.S.C. § 40116(d)(2)(A)(iv). The "Anti–Revenue Diversion Provision of the FAA" states that "the revenues generated by the airport that is the subject of federal assistance may not be expended for any purpose other than the capital or operating costs of (1) the airport; (2) the local airport system; or (3) any other local facility that is owned or operated by the person or entity that owns or operates the airport that is directly and substantially related to the air transportation of passengers or property." 49 U.S.C. 47133(a).

AHTA. Clearly then, no private cause of action exists to enforce alleged violations under the Anti–Revenue Diversion Provision of the FAA.

■ The trial court not only decided that the Authority was precluded from bringing a private cause of action under both federal statutes, but also offered a substantive analysis of the Authority's claims, ruling that the parking tax does not violate the AHTA, nor does it represent a diversion of "airport revenue" in violation of 49 U.S.C. § 47133. These substantive analyses, the Authority avers on appeal, are non-precedential dicta, and the Authority calls upon this Court to exercise its *de novo* standard of review, and find the resolution violative of both statutes. We consider the merits of each of the federal statutory claims, and we note that in *Pennsylvania Turnpike Commission v. Commonwealth,* 587 Pa. 347, 369–70, 899 A.2d 1085, 1098 (2006), our Supreme Court, quoting *Commonwealth ex rel., Fox v. Swing,* 409 Pa. 241, 186 A.2d 24, 26 (1962) most recently held "where a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of obiter dictum[.]" The Authority argues that the tax imposed is by intent and by operation assessed *exclusively* on airport businesses, thus violative of AHTA. The trial court correctly relied on *Airway Arms Incorporated v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982) and this Court's decision in *Capitol Associates v. School District of City of Harrisburg,* 684 A.2d. 1119 (Pa.Cmwlth.1996), *pe-*

*tition for allowance of appeal denied,* 550 Pa. 709, 705 A.2d 1311 (1998) when it concluded that parking patrons, not airport businesses, bear the burden of this tax; a tax on parking transactions is not a head tax. The incidence of the tax is the parking fee transaction, and the measure of the tax is on the transaction fee itself. Further, it is undisputed here that non-airport parking transactions are subject to the parking tax, and there is no exclusivity *sub judice.*

■ The Authority claims that the Anti–Revenue Diversion Provision of the FAA has been violated because revenues generated by the Authority's parking operations at HIA will be used for the general revenue purposes of the District, and will deprive the Authority of tax receipts that could have been used for capital or operating costs of HIA. We find, however, that no such violation has occurred. The proceeds of the parking tax are not generated by the airport, and they are not airport revenue; the taxes are levied not against parking lot owners, but against parking patrons.

The Authority next claims that the resolution violates Section 533 of the Reform Act by imposing a business privilege or gross receipts tax on airport parking.[7] In support of its argument, the Authority relies upon Justice Nigro's Opinion in Support of Reversal[8] in *Airpark International I v. Interboro School District,* 558 Pa. 1, 735 A.2d 646 (1999). Our Court in *Airpark,* 677 A.2d 388, 392 (Pa.Cmwlth.1996),

---

7. Section 533(a) of the Reform Act, 72 P.S. § 4750.533(a) states:

   After November 30, 1988, and notwithstanding any other provision of this act except for subsection (b), no political subdivision may levy, assess or collect or provide for the levying, assessment or collection of a mercantile or business privilege tax on gross receipts or part thereof.

8. Justice Nigro opined that the transaction tax becomes a *de facto* gross receipts tax in a situation where the only service offered is the service that is taxed, as opposed to the situation where a parking lot offers other services (such as a car wash) whose profits will not be subject to the transaction tax on parking.

*affirmed by an equally divided Court,* addressed the issue of whether a school district's parking tax was a privilege tax on gross receipts or a transaction tax, citing a Supreme Court case, *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986), in which the difference was explained. We stated:

> The difference then between a business privilege tax and a transaction tax is not just the stated subject of the tax, but how the tax is measured. A business privilege tax is a tax imposed on all of the gross receipts from all of the businesses' activities anywhere, so long as the base of operations within the political subdivision contributes to those activities because the privilege of doing business is "far more than the sum of transactions ... performed within the territorial limits of the taxing entity." *Id.* A transaction tax, however, is imposed on the receipts from the designated transactions that are actually performed within the taxing entity, because its subject is only the transaction and not the privilege of engaging in a business that allows the transaction to be consummated.

(foot note omitted.)

■ The trial court relied upon Justice Zappala's Opinion in Support of Affirmance in *Airpark,* and noted that Justice Zappala explained that the purpose of a business privilege tax is to tax the business for the privilege of doing business in the district; this tax is measured by the "gross receipts from all of the business' activities;" in contrast, a transaction tax is imposed on the receipts from the designated transactions and the measure of the tax is a percentage of the fees paid by the parking patrons. *Airpark,* 558 Pa. at 4, 735 A.2d at 647, quoting *Airpark,* 677 A.2d at 392. In light of our holding that a tax on parking transactions is not a gross receipts tax, and given that the Supreme Court's equally divided opinion has no precedential effect, we agree with the conclusion reached by the trial court that no violation of the Reform Act has occurred.

The Authority argues that notwithstanding the waiver granted by the District exempting the Authority from the obligation to collect the tax, the Authority will still be required to perform other onerous administrative duties such as permitting the District to inspect and copy its records of parking transactions, and the District has no legal authority to place these improper regulatory burdens upon them. We find that these requirements simply do not constitute the unlawful regulation of the Authority's business, and cannot be characterized as anything other than reasonable measures taken to ensure the efficient collection of taxes.

We are not persuaded by the Authority's next argument, that the tax is violative of the Commerce Clause of the United States Constitution because pursuant to the LTEA, Lower Swatara Township [9] could also attempt to impose the same tax on the HIA parking lots, thus rendering the tax unfairly apportioned. [10] Lower Swatara Township has not, to date, made any attempt to exercise its taxing authority in this matter. We agree with the trial court; we cannot and we will not speculate

---

9. The HIA parking lots are located not only in the District, but also in Lower Swatara Township.

10. In *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court established that a local tax violates the Commerce Clause unless the tax has a substantial nexus with the taxing jurisdiction, *is fairly apportioned,* does not discriminate against interstate commerce, and is reasonably related to services provided by the taxing jurisdiction.

as to what the Township will or will not do in the future.

■ We find equally unpersuasive the Authority's claim that the tax violates both the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution. We concur with the trial court in its finding that the case *sub judice* is not factually distinguishable from *Capitol Associates,* in which we stated:

> The Parking Tax does not violate either the uniformity provision of the Pennsylvania Constitution or the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. "The test of uniformity [and equal protection] is whether there is a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment." (quoting *Airpark,* 677 A.2d at 393).

*Capitol Associates,* 684 A.2d at 1122 (footnotes and citations omitted).

The Authority's argument that the tax is unreasonable, and the resolution therefore unenforceable, must fail; the trial court properly relied upon the holding of this Court in *Capitol Associates, id.* at 1124, that a school district's 10% parking tax paid by patrons of non-residential parking facilities was not excessive or unreasonable under LTEA.

Finally, we find that the trial court did not err in its refusal to allow the Authority to exercise a statutory right of appeal pursuant to LTEA; the Authority failed to satisfy the requirements to pursue such a remedy, and the trial court's decision was proper.

Accordingly, the order of Judge Lawrence F. Clark, Jr. of the Court of Common Pleas of Dauphin County is AFFIRMED.

## ORDER

**AND NOW,** this 12th day of March 2007, the Order of the Court of Common Pleas of Dauphin County entered in the above-captioned matter is **AFFIRMED.**